758 F.2d 1479
 Michael Clark BOWLES, Janet L. Gould, Joshua Ralph Gould,
Sandra M. Plunkett, Joseph J. Young, Jeffrey Alan
Rooney, and Barbara Maureen Fitzgerald,
Petitioners-Appellants,
v.
Sanford S. JONES, Clerk of the State Court of Fulton County
and Leroy Stynchombe, Sheriff, Fulton County,
Georgia, Respondents-Appellees.
 No. 84-8477.
 United States Court of Appeals,
Eleventh Circuit.
 April 25, 1985.
 
 J.M. Raffauf, Decatur, Ga., for petitioners-appellants.
 E. Duane Cooper, Asst. Sol. Gen., Atlanta, Ga., for respondents-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Seven appellants appeal from the district court's denial of their petition for a writ of habeas corpus. The appellants had been found guilty by a jury in the state court of Fulton County of burning the official flag of the United States in violation of Ga.Code Ann. Sec. 26-2803. This statute, entitled "Misuse of the National Flag" states:
 
 
 2
 A person who deliberately mutilates, defaces or defiles the flag of the United States or the State of Georgia or uses such flag or flags for commercial advertising purposes is guilty of a misdemeanor.
 
 
 3
 The convictions arose from the participation by the appellants in a celebration on May 1, 1981, of International Workers' Day, sponsored by the Revolutionary Communist Party ("RCP"). About 15 RCP members were at Techwood Homes throughout the day handing out leaflets and red flags and talking to people. About 9:00 p.m., people were asked to come forward and burn the American flag as a protest against U.S. imperialism. A box of small paper flags was produced and the appellants participated in burning them. They were immediately arrested by officers who had been assigned to observe the demonstration.
 
 
 4
 Appellants received maximum sentences of 12 months imprisonment plus a $1,000 fine each. The Georgia Court of Appeals affirmed the convictions and both the Georgia and United States Supreme Courts denied petitions for writs of certiorari. This petition for writ of habeas corpus was then filed. The case was submitted to a magistrate who then recommended denial of the writ. The trial court adopted and affirmed the order of the magistrate.
 
 I. ISSUES
 
 5
 The only issue which we consider here is the question of whether the Georgia Flag Misuse Statute is unconstitutional as applied and/or on its face.
 
 II. DISCUSSION
 
 6
 A. Constitutionality of the Statute as Applied
 
 
 7
 This Court has recently decided that this Georgia statute was unconstitutional as applied in the case of Monroe v. State Court of Fulton County, 739 F.2d 568 (11th Cir.1984). In Monroe, the facts were almost identical with those here present, with the exception that in Monroe there was evidence of an incipient threat of violence. In oral arguments of this case, the State undertook to distinguish the cases by claiming that there were only two or three people present during the evening of the flag burning other than the persons who were charged and convicted. This is refuted by the magistrate's findings, which were adopted by the trial court. In his findings, the magistrate stated: "The police officers testified the flag burning appeared deliberate because petitioners were 'calling to the neighborhood to come on and join in burning the flags.' " The magistrate then found that "in the instant case, petitioners burned the flag at a public demonstration."
 
 
 8
 Finding no distinction between this case and Monroe, we must reverse the trial court's denial of the writ on the ground that the Georgia statute is unconstitutional as applied to these appellants.
 
 
 9
 B. Unconstitutionality of the Statute on its Face
 
 
 10
 In addition to claiming that the statute was unconstitutional as to them, appellants also challenge the statute as being overbroad on its face. We conclude that we should not reach this issue in light of the Supreme Court's decision in Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973) that the overbreadth analysis should be used only as a "last resort." We have no reason for assuming that the State of Georgia will continue prosecuting persons who stand in the position as did the petitioners in Monroe and in this case now that they have been decided.
 
 
 11
 The judgment of the trial court is REVERSED and the case is REMANDED to the trial court for the issuance of the writ.
 
 KRAVITCH, Circuit Judge, concurring:
 
 12
 I agree with the majority's conclusion that we are bound by Monroe v. State Court of Fulton County, 739 F.2d 568 (11th Cir.1984). I write separately only to add my personal view that, were this a case of first impression in this circuit, I would reject the appellants' First Amendment challenge to the Georgia Flag Misuse Statute and affirm the decision of the court below.
 
 
 13
 In Monroe, the court found the State of Georgia's interest in protecting the American flag as the symbol of our nation insufficient to justify infringing on First Amendment rights. See id. at 574-75. I am unpersuaded, however, by the Monroe court's analysis. First, I cannot agree with the Monroe court's view that "there is no significant difference between [West Virginia State Board of Education v.] Barnette, [319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed.2d 1628 (1943),] in which the government sought to compel the expression of respect toward the flag and this case, in which the government seeks to prevent the expression of disrespect." Monroe, 739 F.2d at 574. In my opinion, there is a significant difference. The fact that the state may not force schoolchildren to salute the American flag does not compel the conclusion that the state may not prohibit mutilation or destruction of the flag. The flag-salute law at issue in Barnette raised the spectre of totalitarianism, and the Supreme Court's opinion emphasized the law's affirmatively coercive effect:
 
 
 14
 Here it is the State that employs a flag as a symbol of adherence to government as presently organized. It requires the individual to communicate by word and sign his acceptance of the political ideas it thus bespeaks. Objection to this form of communication when coerced is an old one, well known to the framers of the Bill of Rights.
 
 
 15
 It is also to be noted that the compulsory flag salute and pledge requires affirmation of a belief and an attitude of mind.
 
 
 16
 Barnette, 319 U.S. at 633, 63 S.Ct. at 1183, 87 L.Ed.2d 1628 (emphasis added; footnote omitted). The Georgia Flag Misuse Statute, on the other hand, requires no affirmation of any kind with respect to the flag or the values it represents. In my view, therefore, Barnette simply does not apply.
 
 
 17
 I also do not agree with the Monroe court's conclusion that Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969), dictated the outcome in Monroe. The Supreme Court in Street reversed the defendant's conviction because it could have been based solely on the defendant's words,[1] rather than on the defendant's act of burning the American flag. The Court expressly reserved the question whether a defendant constitutionally could be convicted for burning the flag. See id. at 581, 89 S.Ct. at 1360. Chief Justice Warren, in dissent, stated, "I believe that the States and the Federal Government do have the power to protect the flag from acts of desecration and disgrace.... [I]t is difficult for me to imagine that, had the Court faced this issue, it would have concluded otherwise." Id. at 605, 89 S.Ct. at 1372 (Warren, C.J., dissenting).[2]
 
 
 18
 As stated by the Ninth Circuit in United States v. Crosson, 462 F.2d 96 (9th Cir.1972), a decision affirming a conviction for violating the federal flag desecration statute, 18 U.S.C. Sec. 700:
 
 
 19
 That the existence of a national flag was considered of great significance to the members of the Continental Congress is demonstrated by the adoption on June 4, 1777, of a national flag.
 
 
 20
 The Supreme Court has said that the flag is the symbol of the nation's power, the emblem of freedom in its truest and its best sense, and that to all lovers of the country the flag signifies government resting on the consent of the governed; liberty regulated by laws; protection of the weak against the strong; security against the exercise of arbitrary power and absolute safety for free institutions against foreign aggression....
 
 
 21
 ....
 
 
 22
 ... The government has power to select a flag and legislate as to its display. Inherent in that power would be a legitimate government interest in prohibiting the contumacious destruction of that flag.
 
 
 23
 Id. at 99, 101 (citations and footnotes omitted); see also Smith v. Goguen, 415 U.S. 566, 587, 94 S.Ct. 1242, 1254, 39 L.Ed.2d 605 (1974) (White, J., concurring) ("The flag is a national property, and the Nation may regulate those who would make, imitate, sell, possess, or use it. I would not question those statutes which proscribe mutilation, defacement, or burning of the flag or which otherwise protect its physical integrity, without regard to whether such conduct might provoke violence.... There would seem to be little question about the power of Congress to forbid the mutilation of the Lincoln Memorial.... The flag is itself a monument, subject to similar protection.").
 
 
 24
 As the Monroe court pointed out, "the Supreme Court has not ruled on the constitutionality of convictions for politically inspired destruction of the American flag." 739 F.2d at 572.[3] If this circuit had not already spoken in Monroe, I would hold the Georgia Flag Misuse Statute constitutional, as applied in this case, on the ground that the state has a valid and substantial interest in protecting the flag as our national symbol.
 
 
 
 [1]
 In Street, the defendant, upon hearing of the shooting of James Meredith, a civil rights leader, carried an American flag into the street and burned it, shouting, "We don't need no damn flag," and, "If they let that happen to Meredith we don't need an American flag." The defendant was convicted under a New York statute that made it a misdemeanor "publicly [to] mutilate, deface, defile, or defy, trample upon, or cast contempt upon either by words or act [any flag of the United States]." N.Y.Penal Law Sec. 1425, subd. 16, par. d (1909). The Supreme Court ruled that the defendant could not constitutionally be convicted solely on the basis of his words. The Court then applied the rule of Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), and reversed the conviction because the Court could not determine from the verdict whether the defendant was convicted for his words or for the act of burning the flag
 
 
 [2]
 Justices Black, White, and Fortas also dissented. All three Justices argued that the Court should have reached the flag-burning issue. In addition, Justices Black and Fortas expressed their personal views that flag-burning statutes do not violate the Constitution. See id. at 610, 89 S.Ct. at 1374 (Black, J., dissenting) ("It passes my belief that anything in the Federal Constitution bars a State from making the deliberate burning of the American flag an offense."); id. at 615-17, 89 S.Ct. at 1377-78 (Fortas, J., dissenting) ("[T]he States and the Federal Government have the power to protect the flag from acts of desecration committed in public.... [T]he flag is a special kind of personalty. Its use is traditionally and universally subject to special rules and regulation.... A person may "own" a flag, but ownership is subject to special burdens and responsibilities. A flag may be property, in a sense; but it is property burdened with peculiar obligations and restrictions. Certainly ... these special conditions are not per se arbitrary or beyond governmental power under our Constitution.")
 
 
 [3]
 In Spence v. Washington, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974), the Supreme Court reversed the conviction of a defendant who displayed the flag with a peace symbol affixed to it by means of removable black tape. The Court noted, however, that the defendant "was not charged under the desecration statute, ... nor did he permanently disfigure the flag or destroy it." Id. at 415, 94 S.Ct. at 2732
 At least four current members of the Court have supported, at one time or another, the view that flag-burning statutes do not violate the Constitution. See id. at 422-23, 94 S.Ct. at 2736 (Rehnquist, J., dissenting, joined by Burger, C.J., and White, J.); Smith v. Goguen, 415 U.S. 566, 591, 94 S.Ct. 1242, 1256, 39 L.Ed.2d 605 (Blackmun, J., dissenting, joined by Burger, C.J.). But see Kime v. United States, 459 U.S. 949, 103 S.Ct. 266, 269, 74 L.Ed.2d 207 (1982) (Brennan, J., dissenting from denial of certiorari).