[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-14416

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,
Cross-Appellant,

versus

JORGE L. TORRES,

Defendant-Appellant,
Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 1:08-cr-20231-PCH-6,
1:19-cv-25150-PCH

_____

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and BRANCH, Circuit Judges.

PER CURIAM:

Jorge Torres appeals and the United States cross-appeals the order granting his successive motion to vacate, 28 U.S.C. § 2255, and imposing a new sentence of 360 months of imprisonment for conspiring to and attempting to distribute cocaine, 21 U.S.C. §§ 841, 846, and for conspiring to and attempting to commit a Hobbs Act robbery, 18 U.S.C. § 1951. Torres challenges the reasonableness of his new sentence, and the United States argues that Torres procedurally defaulted his grounds for challenging his original sentence. Based on our recent decisions in *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021), *cert. denied*, No. 21-6171 (U.S. Mar. 7, 2022), we agree with the government. We vacate and remand.

## I. BACKGROUND

Officers arrested Torres as he and his coconspirators planned to steal drugs from an alleged stash house in a reverse-sting operation. An undercover agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives posed as a disgruntled drug courier for a Colombian drug organization. The agent recruited seasoned armed robbers led by Freddy Crespo, to steal his alleged shipment of cocaine. During conversations the agent recorded, the conspirators prepared for the agent to be accompanied by an armed guard. Crespo also offered to provide a lookout for law enforcement and to contribute police gear, which he and his associates typically wore when conducting narcotics robberies.

On the day of the planned robbery, Torres and two associates met at the Cookie Dollar Store. In response to a call from Crespo, the three associates drove to an area near a warehouse district. After leaving Torres in the parking lot of a McDonald's restaurant to surveil the area, the other associates went to a nearby gas station, where they met with other conspirators and the undercover agent as he awaited a telephone call for the location of the cocaine.

Federal agents then arrested the conspirators. The agents searched the car in which Torres had been a passenger and discovered gloves, a large machete, and a baseball cap affixed with the seal of the United States of America. The agents discovered in another vehicle similar baseball caps, a shirt bearing a SWAT logo, additional gloves, two gold police-type badges, handcuffs, and loaded firearms.

An associate arrested at the gas station later confessed to committing numerous robberies with Crespo and Torres during which he used a pistol that Torres owned. The associate identified Torres's pistol among the firearms that the agents seized. The associate also recounted three telephone calls in which Torres instructed coconspirators to meet at the gas station, imparted that Crespo and two cohorts "were all together with the people with whom the robbery was going to be done," and informed Crespo that "this thing was looking good" and to go to the warehouse.

Torres was convicted of six crimes: conspiring to possess with intent to distribute 5 kilograms or more of cocaine, 21 U.S.C. §§ 841, 846; attempting to possess with intent to distribute 5 kilograms or more of cocaine, *id.* § 841; conspiring to commit Hobbs Act robbery, 18 U.S.C. § 1951(a); attempted Hobbs Act robbery, *id.*; conspiring to carry a firearm during and in relation to a crime of violence and a drug trafficking crime, *id.* § 924(o); and using and carrying a firearm during and in relation to a crime of violence and a drug trafficking crime, *id.* § 924(c)(1)(A). Torres's indictment listed both drug charges and both Hobbs Act charges as predicate offenses for the firearm charges.

The district court instructed the jury that the evidence had to prove beyond a reasonable doubt that each firearm crime was committed in relation to or in furtherance of "one of the federal drug trafficking crimes, or one of the federal crimes of violence, or both, as charged in Counts 1, 2, 3, or 4 of the indictment." For each firearm charge, the district court also instructed the jury that

"[i]t is sufficient if the Government proves, beyond a reasonable doubt, that [Torres] knowingly violated the law in one of those ways; but, in that event, you must unanimously agree upon the way in which [he] committed the violation." The jury found Torres guilty on all counts in a general verdict.

Torres, a career offender, faced an advisory guideline range of 360 months to life imprisonment and a consecutive term of 60 months of imprisonment for possessing a firearm. The district court sentenced Torres to 380 months of imprisonment, consisting of 320 months for each drug crime and 230 months for each Hobbs Act crime and for conspiring to use a firearm, all to run concurrently, and of a consecutive term of 60 months for using a firearm.

Torres challenged the sufficiency of the evidence for each conviction on direct appeal, and we affirmed. *U.S. v. Torres*, 361 F. App'x 109 (11th Cir. 2010). We concluded that the evidence of Torres's discussion of the robbery at the dollar store, travel to the McDonald's restaurant, conversation with an associate en route to the restaurant, and contribution of a gun to use during the robbery supported his convictions for conspiring to and attempting to distribute cocaine. *Id.* at 116–17. That same evidence, we concluded, proved that Torres had conspired to and attempted to affect interstate commerce by "knowingly join[ing] in a plan to rob [the undercover agent], and [taking] a substantial step toward that crime by, among other things, arriving at the McDonald's to await further instructions." *Id.* at 117. And we upheld Torres's

firearm convictions based on the evidence that he "participated in the Cookie Dollar Store meeting . . . and one of the guns found . . . belonged to him," which provided a "link between [him] and . . . one of the guns used in the attempted robbery" and supported the jury's finding that he knew "a gun was going to be used in the narcotics robbery." *Id.* at 118.

Torres twice moved for postconviction relief without success. *See* 28 U.S.C. § 2255. Torres first moved to vacate his sentence on the ground the district court was biased, but the district court denied his motion. And we denied him a certificate of appealability. *United States v. Torres*, No. 11-14136-G (11th Cir. Feb. 3, 2012). Later, Torres applied for leave to file a second motion based on *Johnson v. United States*, 576 U.S. 591 (2015), but we denied that application. *United States v. Torres,* No. 16-13543 (11th Cir. July 1, 2016).

We later granted Torres leave to file a successive motion challenging the validity of his firearm offenses based on *United States v. Davis*, 139 S. Ct. 2319 (2019). *See* 28 U.S.C. § 2255(h)(2). We ruled that Torres "made a *prima facie* showing that his claim satisfie[d] the statutory criteria of § 2255(h)(2) on the basis that his § 924(c) and § 924(o) convictions in Counts 5 and 6 may be unconstitutional . . . as [based on] the now invalid residual clause of § 924(c)(3)(B)."

With the assistance of appointed counsel, Torres filed an amended motion to vacate. 28 U.S.C. § 2255. He argued that the district court had to presume that his two firearm convictions

rested upon the least of the criminal acts that he committed, which was conspiracy to commit Hobbs Act robbery. Torres argued that, after *Davis*, Hobbs Act conspiracy no longer qualified as a crime of violence and was an invalid predicate offense that could not support his firearm convictions. And Torres argued, based on *Stromberg v. California*, 283 U.S. 359 (1931), that the district court could set aside a general verdict if the jury could have relied on multiple grounds, one of which was invalid. The government responded that Torres's *Davis* claim was procedurally defaulted.

The district court granted Torres's motion and vacated his convictions and sentences for his two firearm offenses. The district court ruled that Torres's *Davis* claim was not barred by procedural default because his claim was "jurisdictional in nature" and, in the alternative, he provided "cause and prejudice" to overcome the procedural default. The district court then imposed a new sentence of 360 months of imprisonment.

## II. STANDARD OF REVIEW

The application of the doctrine of procedural default to a motion to vacate presents a mixed question of fact and law, which we review *de novo*. *Granda*, 990 F.3d at 1286.

## III. DISCUSSION

A federal prisoner can move to vacate, set aside, or correct his sentence on the "ground that . . . sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C.

§ 2255(a). This motion for collateral relief is subject to the doctrine of procedural default. *Granda*, 990 F.3d at 1280. That doctrine bars a defendant from obtaining postconviction relief based on an argument that he could have raised at trial and on direct appeal. *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011). The defendant can overcome the bar by proving cause and prejudice to excuse his procedural default, or he can bypass the bar by establishing that the alleged sentencing error is jurisdictional. *United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020).

Jurisdiction refers to "the courts' statutory or constitutional power to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998)). The district courts have the power to adjudicate "all offenses against the laws of the United States." 18 U.S.C. § 3231. "So [as] long as the indictment charges the defendant with violating a valid federal statute as enacted in the United States Code, it alleges an 'offense against the laws of the United States' and, thereby, invokes the district court's subject-matter jurisdiction." *United States v. Brown*, 752 F.3d 1344, 1354 (11th Cir. 2014).

The district court erred by classifying Torres's challenge as jurisdictional. "A jurisdictional defect is one that strips the court of its power to act and makes its judgment void." *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001) (internal quotation marks omitted and alterations adopted). To be sure, after *Davis*, 139 S. Ct. 2319, Torres's crime of conspiring to commit

Hobbs Act robbery no longer qualifies as a crime of violence. But the invalidation of one of Torres's four predicate offenses did not divest the district court of the power to adjudicate his criminal charges. Torres's indictment charged him with violating federal laws that prohibited conspiring to and attempting to use a firearm during and in relation to a crime of violence and a drug trafficking crime. 18 U.S.C. § 924(o), (c)(1)(A). And his indictment alleged three valid predicate offenses: conspiring to possess with intent to traffic cocaine, attempting to possess with intent to traffic cocaine, and attempting to commit a Hobbs Act robbery.

Our recent decision in *Granda* controls this appeal. Torres procedurally defaulted and "cannot collaterally attack his conviction on a vagueness theory" he failed to advance at trial or on direct appeal. *See Granda*, 990 F.3d at 1285–86. Like the movant in *Granda*, Torres challenged the validity of his firearms convictions based on *Davis*. *See id.* at 1281–83. And Torres's indictment also alleged predicate offenses consisting of crimes of violence, one of which was invalid, and of drug trafficking crimes, which were valid. *See id.* at 1281. And like the movant in *Granda*, Torres's jury returned a general guilty verdict after being instructed that they could convict on finding that the firearm offenses were committed in relation to or in furtherance of either a drug trafficking crime, a crime of violence, or both, so long as the jury agreed unanimously on the predicate offense. *See id.* at 1280.

*Granda* also forecloses Torres's argument that he can establish cause and prejudice to overcome his procedural default.

Torres possessed at the time of his direct appeal "the building blocks . . . [to make] a due process vagueness challenge to the § 924(c) residual clause." *See id.* at 1286–88. And Torres cannot prove actual prejudice to excuse his procedural default. Torres failed to "establish a substantial likelihood that the jury relied <u>only</u> on the . . . conviction [for conspiracy to commit Hobbs Act robbery], because reliance on any of [his other convictions] would have provided a wholly independent, sufficient, and legally valid basis to convict" him for conspiring to possess and for possessing a firearm, 18 U.S.C. § 924(o), (c)(1)(A). *Granda*, 990 F.3d at 1288. All of Torres's "predicates are inextricably intertwined, arising out of the same cocaine robbery scheme." *See id.* at 1280. Torres provided a firearm, acted as a lookout, and coordinated the movements of his cohorts to execute their plan to steal cocaine. The jury necessarily must have found that Torres conspired to possess and possessed a firearm in furtherance of the conspiracy to commit a Hobbs Act robbery as well as in furtherance of his other crimes of attempting to commit Hobbs Act robbery and of conspiring to and of attempting to obtain the cocaine. *See id.* at 1289.

Torres's argument that actual innocence excuses his procedural default also fails. "Actual innocence means factual innocence, not mere legal innocence." *Id.* at 1292 (quoting *Lynn v. United States*, 365 F.3d 1225, 1235 n.18 (11th Cir. 2004)). Torres argues he is innocent of the firearm offense due to the invalidity of his predicate offense. But we do not "extend the actual innocence of sentence exception to claims of legal innocence of a

predicate offense justifying an enhanced sentence." *McKay*, 657 F.3d at 1199. And Torres concedes that *Granda* forecloses "his challenge to his § 924(c) conviction [as] based on 'mere legal insufficiency' rather than 'factual innocence' . . . ." *See Granda*, 990 F.3d at 1292.

## IV. CONCLUSION

We **VACATE** the order granting Torres's motion to vacate and **REMAND** for further proceedings consistent with this opinion.

**VACATED** and **REMANDED.**